UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GEORGE HAYWARD,

        Plaintiff,

-against-

META PLATFORMS, INC.,

        Defendant.
-------------------------------------------------------------------X

Case No.

**COMPLAINT**

**Plaintiff Hereby Demands A Jury Trial**

Plaintiff, George Hayward, by his attorneys Kaiser Saurborn & Mair, P.C., as and for his complaint against defendant, alleges as follows:

### PARTIES, JURISDICTION, AND NATURE OF ACTION

1. Plaintiff, George Hayward ("plaintiff" or "Hayward"), is a former employee of Meta Platforms, Inc., formerly Facebook, Inc.

2. Upon information and belief, defendant, Meta Platforms, Inc. ("defendant" or "Meta"), is a technology company whose principal place of business and corporate headquarters is at 1 Hacker Way, Menlo Park, CA 94025.

3. Venue is properly laid in this court in that the causes of action arose in New York County.

4. Federal jurisdiction exists over this dispute pursuant to diversity as the parties are citizens of different U.S. states and plaintiff's alleged damages exceed $75,000.00.

5. Mr. Hayward was terminated by Meta because he opposed Meta's utilization of a testing practice called negative testing, after being directly asked—and then refusing—to conduct such a test. Negative testing, as it pertains to Mr. Hayward's work, vandalizes users' smart phones without the user's consent by surreptitiously draining the battery life of the user's

smartphone. Negative testing violates New York State penal code §145.14 (Criminal tampering in the third degree), which prohibits the damaging of property without the consent of the property's owner. Mr. Hayward's termination violated New York State Law §740 [as amended in January 2022].

## BACKGROUND

### I.

### MR. HAYWARD'S META EMPLOYMENT

6.  Mr. Hayward was hired by Meta on October 11, 2019 as a Data Scientist, Product Analytics.

7.  In February 2021, he was promoted to Senior Data Scientist, Product Analytics.

8.  In all his time at Meta, Hayward never received a performance review below "Meets All Expectations."

9.  He has been ranked three times in a row at "Exceeds Expectations" or above (the first of which being the COVID company-wide "Exceeds Expectations" rating issued in the first half of 2020).

### II.

### MR. HAYWARD OBJECTS TO NEGATIVE USER TEST

10. On or about May 4, 2022, Mr. Hayward's supervisor, Xin Zhang ("Zhang") proposed that Mr. Hayward run a "negative user test."

11. Ms. Zhang then sent Mr. Hayward an internal document she co-authored entitled, "Running Thoughtful Negative Tests." This document, attached hereto as Exhibit "A", defined a negative user test as "a method that measures impact by intentionally degrading some user experiences."

12. Since Mr. Hayward was a Senior Data Scientist in Messenger Battery Efficiency group, the test Ms. Zhang required would entail intentionally draining a user's battery without the user's consent. Mr. Hayward himself would have had to oversee the negative test. This alarmed Mr. Hayward as the proposed test is illegal . In particular, Mr. Hayward was concerned that, in an edge case, a person using Messenger might call for emergency help and be **unable to do so because his/her battery was drained.**

13. Consequently, the next day, May 5, 2022, Hayward sent the following message to Zhang:

> "If we intentionally "degrade some user experiences" we open ourselves personally and we open Messenger more generally to great risk. I'm actually not even sure if this is legal to do with regard to various consumer protection laws. When I was in team selection, I was told again and again that we never do this (which I guess is incorrect as looks like some people have done it).
>
> So, on the one hand, an experiment is the best way to quantify the impact of battery drain. On the other hand, it's far too risky for me to advocate intentionally "degrading" a user experience-both legally and also PR-wise (plus you could actually hurt someone in an edge case)."

[workchat from George Hayward to Xin Zhang, dated May 5, 2022, attached hereto as Exhibit "B"]

14. Zhang responded in a chat message, "to be clear, I did not suggest that we need to run negative experiments *now*. What I meant was that we need to step back and find out *the real impact for battery*." (emphasis supplied) [workchat from Ms. Zhang to Mr. Hayward dated May 5, 2022 attached as Exhibit "C"]

15. Mr. Hayward raised the issue again to Zhang in their one-on-one meeting later in May 2022, stating that Meta should never do these negative user tests, particularly tests used to

3

drain the batteries of unaware users—especially on Messenger, because Messenger is used as a telecommunication device.

16. Ms. Zhang responded that "by hurting a small number of people we could help a much larger number of people." Mr. Hayward responded to Zhang that the worst decisions in human history have used the same rationale.

17. On June 17, 2022, Zhang told Mr. Hayward that she "fears [him]" and that he makes her "feel bad," clearly referring to Mr. Hayward's clear and powerful objections to her plan to run battery drain tests on unaware users.

18. The surreptitious draining of battery life potentially places at risk users who may require their phones in circumstances where they need to communicate with others, including but not limited to police or other rescue workers, and are left with compromised phones in terms of battery life. Negative testing constituted a danger to public health and safety.

19. Meta's negative testing violates New York State penal law which in relevant part states:

> §145.14 (**Criminal tampering in the third degree**)
> A person is guilty of criminal tampering in the third degree when, having no right to do so nor any reasonable ground to believe that he has such right, he tampers with property of another person with intent to cause substantial inconvenience to such person or to a third person. Criminal tampering in the third degree is a class B misdemeanor.

### III.

### META RETALIATED AGAINST MR. HAYWARD

20. On July 15, 2022, Mr. Hayward sent Ms. Zhang internal documentation ("Facebook Experimentation Ethics", attached hereto as Exhibit "D") that explicitly labeled "intentionally degrading the user experience" as a "potential way to cause harm."

4

21. Zhang ignored this message and then began a campaign of retaliation against Mr. Hayward that included but was not limited to the following:

- Ms. Zhang instituted a 'management out' procedure in July 2022 based on Mr. Hayward allegedly not "Meeting All Expectations" in the "job responsibilities." Instead of receiving the performance boost mandated in Hayward's official job responsibilities for raising data issues such as this, Ms. Hayward's work in this area was systematically erased and his performance score necessarily suffered. Specifically, Mr. Hayward's responsibilities included reporting data issues, but these same responsibilities were brashly and systematically removed from his mid-year assessment, which, in turn, was used to begin his management-out procedure.

- Despite Mr. Hayward's work surfacing this illegal practice (and others, such as improper causal inference work) Mr. Hayward was given the lowest possible score in his review for *"Surfaces issues and failures of high-level strategy to senior leaders."*

- A new responsibility—not listed in Mr. Hayward's official rubric—was added. If this new responsibility was not added to the 'Autonomy' category, Mr. Hayward would have 'Met All Expectations' for 'Autonomy.' This added requirement—which is the only newly-added-to-the-rubric bullet point—sets up a paper trail to manage Mr. Hayward out.

- Mr. Hayward's Analytics Review presentations on May 9, 2022 and June 14, 2022 were scheduled and then cancelled at the last minute.

- Although Ms. Zhang initially told Mr. Hayward to "lean into COVID" for his performance review, Zhang would not record any instance of Mr. Hayward's COVID + asthma illness, despite his repeated requests for his illness to be at least *mentioned* in his mid-year review.

22. On August 16, 2022, Mr. Hayward filed an internal "SpeakUp" ethics complaint with Meta.

23. On November 9, 2022, Mr. Hayward was terminated.

24. Meta chose to terminate Hayward as part of an alleged reduction in force to retaliate against him for complaining about Meta's negative testing. If not for his repeated objections, he would not have been included in the alleged reduction in force.

25. Meta had no legitimate business reason for its adverse treatment of Mr. Hayward, including but not limited to, its termination of Plaintiff.

26. Defendant's conduct has had a continuing impact on plaintiff.

## CAUSE OF ACTION I

27. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "26" as if incorporated and realleged herein.

28. Defendant retaliated against Mr. Hayward for its improper and unlawful use of negative testing.

29. By reason thereof, defendant has violated New York State Labor Law §740 and plaintiff has been damaged in an amount to be determined at trial.

30. By reason thereof, defendant has violated New York State Labor Law §740 [as amended] and plaintiff has been damaged in an amount to be determined at trial.

**WHEREFORE,** plaintiff demands judgment against defendant as follows:

(i) Assessing compensatory damages in an amount to be determined at trial;

(ii) Attorney fees and disbursements; and

    (iii)    For such other relief as the Court deems just and proper.

Dated: New York, New York
       January 20, 2023

                             **KAISER SAURBORN & MAIR, P.C.**

By: _____
                   Daniel J. Kaiser, Esq. [DK-9387]
                   William H. Kaiser, Esq. [WK-7106]

                   Attorney for plaintiff
                   30 Broad Street, 37th Floor
                   New York, New York 10004
                   (212) 338-9100